UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

          Plaintiff,

  v.

Rick R. Larson,

          Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-3438 ADM/AJB

_____

Mary L. Trippler, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Rick R. Larson, pro se.

_____

## I. INTRODUCTION

On October 14, 2009, the undersigned United States District Judge heard oral argument on Plaintiff the United States of America's ("United States") Motion for Summary Judgment [Docket No. 8]. For the reasons set forth below, the United States' Motion is granted.

## II. BACKGROUND[1]

In March 1987, Defendant Rick R. Larson ("Larson") applied for a Federal Family Education Loan Program ("FFELP") loan from the Student Loan Marketing Association ("Sallie Mae"). Francisco Decl. [Docket No. 12] ¶ 20. Under the terms of the loan, Sallie Mae agreed to repay Larson's outstanding student loan obligations and consolidate his student loan debt into a single loan with an interest rate of nine percent. Id. The consolidation loan was disbursed in the amount of $20,997.93. Id.; Def.'s Mem. in Opp'n to Mot. for Summ. J. [Docket No. 14] at 1.

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Over the next several years, Larson made payments on the consolidation loan totaling $12,531.56, until he defaulted on the loan on November 7, 1995. Francisco Decl. ¶ 20; Def.'s Mem. in Opp'n to Mot. for Summ. J. at 1. The guaranty agency listed on the Promissory Note paid the holder of the note for the default claim of $24,945.58, which represented principal, interest that had been capitalized during periods of deferment or forbearance, and unpaid accrued interest due on the loan. Id.

In November 2001, the consolidation loan was assigned to the U.S. Department of Education ("Education"). Id. The balance due at that time was $19,450.35. Id. No payments have been made on the loan since it was assigned to Education, and the total amount due as of August 4, 2009, was $30,476.77, consisting of $15,584.53 in principal and $14,892.24 in unpaid accrued interest. Id. Interest on the unpaid principal accrues at a rate of $3.83 per day. Id.

The United States initiated this action on June 27, 2008, Compl. [Docket No. 1] and now moves for summary judgment, arguing that there are no genuine issues of material fact and that the United States is entitled to judgment as a matter of law.

### III.  DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the

evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Larson raises two arguments in opposing summary judgment. He contends that (1) a genuine issue of material fact exists as to whether certain of his payments or portions thereof were properly credited against the principal and interest balances on the consolidation loan; and (2) a genuine issue of material fact exists as to whether collection costs that have been assessed against him are reasonable. Def.'s Mem. in Opp'n to Mot. for Summ. J. at 3.

**B.     Crediting of Payments**

Larson argues his payments made between June 1989 and March 1995 should have resulted in a reduction of the principal amount owed on the consolidated loan. In particular, he contends that a greater portion of two specific payments—one on January 16, 1992, for $1,579.00 and another on March 7, 1995, for $235.55—should have been applied to his principal balance than the $824.79 and $176.29 that were actually applied. The United States argues that Larson has failed to present any evidence to contradict its evidence showing that Larson's payments were appropriately applied between interest and principal. The Court agrees.

The record shows that Larson's payments since the inception of the loan were often late—they were frequently more than 30 days late, on several occasions they were more than 100 days late, and twice they were approximately 200 days late. See Francisco Decl. Ex. X (Declining Balance History). Although Larson's payments between June 1989 and March 1995 were for amounts greater than the interest that accrued during a 30-day period, they still were not

sufficiently large to fully pay the interest that accrued during the lengthy periods in between payments, which routinely lasted more than two months. Despite Larson's assertion that the payments were for amounts such that a portion (or a greater portion) of them should have applied to the principal balance, Larson has failed to present any evidence to contradict the United States' evidence showing the manner in which the payments were applied to interest and principal, in that order.

In his brief and at oral argument, Larson also argued that a June 1998 payment for $1,161.71 was never applied to the balance of the consolidation loan. By a letter to the Court dated October 29, 2009 [Docket No. 21], Larson withdrew that argument, explaining that he has since realized that the $1,161.71 payment related to a loan that is not a part of the consolidated loan at issue here.

Lastly, Larson argues that a genuine issue of fact remains concerning how an October 1998 payment for $20,000 was applied to the loan. Specifically, Larson contends that the $4,000 of that payment that were applied to cover collection costs was an unreasonable assessment of collection costs. For the reasons explained in the analysis below, however, the assessed collection costs were not unreasonable.

**C.      Reasonableness of Collection Costs**

Larson claims the $20,000 payment was made on his own initiative and that neither Education nor any of its agents or predecessors in interest had to take action to receive the payment. He argues that the "fairest and most straightforward" approach for determining reasonable collection costs is to do so "based on the actual time and activity expended on each case." Def.'s Mem. in Opp'n to Mot. for Summ. J. at 7. Thus, he claims, the $4,000 assessed as

4

collection costs is an unreasonable amount given that Education had to do "little if anything" to secure the $20,000 payment.

The United States responds that the collection costs were determined in accordance with the Higher Education Act ("HEA") 20 U.S.C. § 1091a(b)(1) and its implementing regulation, 34 C.F.R. § 682.410(b)(2). Pursuant to that authority, reasonable collection costs are determined on a "cost-averaging basis" that takes into account the total costs associated with a guaranty agency's entire portfolio of defaulted loans, as opposed to requiring the guaranty agency to track the individual charges associated with the collection of a particular borrower's account. Thus, the United States concludes, Larson's argument that the collection costs were unreasonable in light of the circumstances surrounding his $20,000 payment is not legally cognizable. Pl.'s Reply Mem. [Docket No. 17] at 11-12.

The Seventh Circuit, which appears to be the only circuit court to have addressed the issue, upheld the flat-rate formula for calculating reasonable collection costs on a cost-averaging basis. See Black v. Educ. Credit Mgmt. Corp., 459 F.3d 796, 800-01 (7th Cir. 2006). In holding that 34 C.F.R. § 682.410(b)(2) was not arbitrary, capricious, or manifestly contrary to 20 U.S.C. § 1091a(b)(1), the court explained:

> Black urges that it is unfair to make borrowers who seek to repay their loan obligations responsible for the costs associated with the real deadbeats who never attempt to reconcile their accounts. Perhaps he is correct, as a matter of ultimate morality, but the real world does not operate this way. The price of merchandise in a store reflects the fact that some people shoplift; the rates associated with credit cards reflect the fact that some cardholders never pay their bills. In these and countless other instances, the many who pay end up absorbing the costs for the few who do not. *Black points to no provision in the HEA that requires guarantors to charge each borrower in default only the collection costs that the agency spent in attempting to collect his or her individual debt.* Under Black's view,

5

> the costs of those who successfully evade collection efforts would ultimately be borne by the taxpayers. Such an outcome would conflict directly with the Secretary's interpretation of HEA as mandating that the borrowers themselves, not the taxpayers, should bear the reasonable costs of collecting student loans in default. . . . This policy strikes us as entirely consistent with the statue . . . .

Id. (emphasis added). The Court finds the reasoning of the Black court persuasive. Perhaps there is inherent unfairness to the currently used flat-rate method of calculating reasonable collection costs on a cost-averaging basis. That, however, is a public policy issue better considered legislatively rather than judicially.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the United States' Motion for Summary Judgment [Docket No. 8] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 5, 2010.